UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                       Chapter 11

MEnD Correctional Care, PLLC,                    BKY 22-60407

Debtor.

---

UNITED STATES TRUSTEE'S RESPONSE
TO OBJECTIONS BY THE DEBTOR TO THE
APPOINTMENT OF AN OMBUDSMAN

---

The Acting United States Trustee, through her undersigned attorney, submits this response to the notice and hearing by the above-named debtor objecting to the appointment of a patient care ombudsman. The Acting U.S. Trustee submits that there has been insufficient proof that the appointment of an ombudsman is not necessary. Instead, based on the record now before the court, an ombudsman appears to be appropriate. In furtherance of her response, the Acting U.S. Trustee states as follows:

FACTS

1. This case was commenced as a voluntary chapter 11 case on November 30, 2022, and the case is now pending before the court. The debtor has not yet filed its bankruptcy schedules and statements.

2. On information and belief, the debtor is in the business of providing medical services to individuals being held in correctional facilities. The facilities are located in five states and the debtor's employees, who are medical professionals, provide services at those locations. In total, there about 34 different jails and other facilities at which the debtor provides medical services.

The Debtor's Motion

3. The motion before the court seeks a finding that a patient care ombudsman is not necessary, as provided for in 11 U.S.C. §333(a)(1)[1]. Under that subsection, the court *shall* order the appointment of an ombudsman unless the court makes specific findings that an ombudsman is not needed under the specific facts of the case. *Id.*

4. The debtor's motion alleges: "The Debtor alleges that there is no indication of poor patient care that contributed in any way to the Debtor's filing of Chapter 11." ECF #9, p.2, ¶9. The Debtor's motion goes on to state:

> "The bankruptcy was not caused by licensing issues or issues with patient and/or client care. The Debtor is regularly reviewed by licensing authorities. . . . The Debtor does not intend to reduce its current level of patient care. The Debtor has sufficient safeguards to ensure the appropriate level of care. An ombudsman would add a substantial and unnecessary expense to the reorganization process."

*Id.* at p.3, ¶11.

5. The debtor's motion then goes on to cite *Flagship Franchises of Minnesota, LLC,* 484 B.R. 759 (Bankr. D. Minn. 2013), for the nine factors for the court to consider in determining whether it should refrain from ordering an ombudsman appointment. Those nine factors are:

(1) the cause of the bankruptcy;
(2) the presence and role of licensing or supervising entities;
(3) the debtor's past history of patient care;
(4) the ability of the patients to protect their rights;
(5) the level of dependency of the patients on the facility;
(6) the likelihood of tension between the interests of the patients and the debtor;
(7) the potential injury to the patients if the debtor drastically reduced its level of patient care;
(8) the presence and sufficiency of internal safeguards to ensure the appropriate level of care; and

---

[1] There is no dispute that the debtor is a health care business, as defined in the bankruptcy code.

    (9) the impact of the cost of the ombudsman on the likelihood of a successful reorganization.

*Id. a*t 762.

    6.    The *Flagship Franchises* case went on to state that the weight given to each factor is at the discretion of the reviewing court and that no one factor is determinative. *Id.* The case further went on to analyze each of the factors after hearing testimony from the debtor.

    7.    The debtor, in its motion, does not provide a detailed analysis of each of the *Flagship Franchises* factors. Instead, it makes the general assertions that there are no licensing issues, that the current level of medical care provided is adequate, and that there are "safeguards" in place to assure the appropriate level of care. However, the motion fails to describe any such safeguards. The debtor's motion does reserve the right to call Todd Leonard to testify in support of the motion.

## OBJECTIONS

    8.    The U.S. Trustee objects to debtor's motion because the debtor has not met its burden of showing that an ombudsman is unnecessary under the specific facts of the case.

    9.    The motion does not set forth specific facts which would meet the *Flagship Franchises* criteria and cause the court to order that an ombudsman is not necessary in this case. The debtor has not met its burden of proof. The Acting U.S. Trustee submits that notwithstanding Debtor's assertions to the contrary, an ombudsman is necessary under the facts of this case.

## The Minnesota Board of Medical Practices Findings

    10.    According to debtor's petition, its president, medical director, and sole owner is Dr. Todd Leonard. According to the Minnesota Board of Medical Practice, Dr. Leonard's medical license in Minnesota was indefinitely suspended on March 1, 2022. He was also assessed a $30,000 penalty.

11. A review of Dr. Leonard's license status at the Minnesota Board of Medical Practice (BMP) is revealing, not only about his individual licensure, but also revealing about the care provided by *this debtor* to its patients.

12. Specifically, the Minnesota BMP web site includes the detailed findings which document Dr. Leonard's medical license suspension arising from his operation of the debtor's business. The suspension decision was issued as the result of the medical mismanagement of a patient in a correctional facility that resulted in the patient's death. The substandard medical care was not provided directly by Dr. Leonard, rather it was provided by this debtor through its other employees while under Dr. Leonard's supervision. A copy of the BMP report of January 21, 2022, is attached hereto as Exhibit A.

13. The BMP report on Dr. Leonard (Exhibit A) describes not only Dr. Leonard's conduct, but more importantly, has factual findings regarding the nature of the debtor's business in providing medical services to correctional institutions, including the services provided by nurses, supervisors and other medical personnel, all employees of the debtor.

14. A review of Exhibit A reveals that the BMP found that an unnamed nurse working for this debtor had substantial inaccuracies in the reporting of the patient's condition in the medical records. See Exhibit A, ¶¶ 62-67. Exhibit A also describes how a different (unnamed) nurse made material misstatements regarding the steps taken by the debtor's professional staff in treating the patient. Exhibit A, ¶172. Additional findings show other failures by the nursing staff. *Id.* at ¶176.

## ARGUMENT

15. Applying the *Flagship Franchises* factors to the debtor's factual situation, as described in the BMP findings in Exhibit A, leads to the irrefutable conclusion that an ombudsman is needed.

Exhibit A describes how, in a correctional institution where the debtor sees its patients, there is a total level of dependency on the debtor and the correctional institution, while the patient's interests are easily subordinated. Further, the people in custody have no medical alternative but to use the debtor. They also have substantially limited rights since they are in legal custody. Exhibit A also describes in detail the high level of tension between sound medical advice and the correctional institution which must pay when a prisoner needs hospitalization. These facts alone satisfy the fourth, fifth and sixth *Flagship Franchises* criteria in favor of an ombudsman.

16. In addition, the findings of the BMP show that minimum health care standards have not been met by the debtor corporation. This includes not only Dr. Leonard, but also, in at least a few instances, members of the debtor's professional staff[2], as described in paragraph 14, above. This satisfies the second and third *Flagship Franchises* criteria in favor of appointing an ombudsman.

17. Also, although the debtor's motion says its filing was due to financial difficulties, not patient care issues, that may not be wholly accurate. On information and belief, the family of the patient who died, as described in the BMP findings, obtained a substantial settlement against the debtor for the death. Since the bankruptcy schedules have not yet been filed, it is not clear if that claim was covered by insurance or if there is still an unpaid claim against the debtor that contributed to the case filing. In addition, a straight line may be drawn from the debtor's patient care failures, which were well publicized, to the cancellation of service contracts by many of its institutional clients which led directly to the debtor's financial difficulties.

---

[2] A review of the Board of Medical Practices web site also reveals prior management problems with Dr. Leonard individually. Dr. Leonard stipulated to being reprimanded on May 14, 2011, for mishandling of prescription drugs. The limitations established by that reprimand were fully lifted and that case was resolved on September 7, 2013, returning Dr. Leonard to full practice status.

18. Finally, nothing in the record reveals who is managing the debtor now. It can't be Dr. Leonard, since his medical license is still under suspension. The U.S. Trustee's office has been advised that Dr. Leonard has brought in a new medical director to oversee the care of patients in the correctional facilities, but the identity, qualifications and patient care history of any such individual remain unknown.

## CONCLUSION

19. The debtor fails most, if not all the *Flagship Franchises* criteria. The unique nature of the debtor's business, providing health care in a prison environment, standing alone, indicates a need for an ombudsman. That, coupled with Dr. Leonard's medical suspension and the findings of the BMP, makes a patient care ombudsman imperative.

20. The debtor's patient care problems extended beyond Dr. Leonard's singular actions, with the care deficiencies extending into the nursing staff. The situation demands independent oversight for the patient/prisoners, since the patients are particularly vulnerable while they are in custody. As the facts in Exhibit A describe, substantial oversight is needed to assure ongoing safety in the future.

21. The debtor's motion indicates that if needed, Dr. Leonard will testify in support of the motion. The U.S. Trustee submits that such testimony will be of limited value and instead would be an unnecessary use of the court and its resources. The debtor claims such testimony will meet the *Flagship Franchises* criteria to show that an ombudsman is not needed. That appears impossible since there has, in the past, been substantial mishandling of patients in the correctional institutions where the debtor sees patients.

22. The Acting U.S. Trustee submits that no purpose would be served by holding an evidentiary hearing on the issue. The debtor's prior mismanagement resulting in a death is sufficient to warrant an order requiring an immediate patient care ombudsman appointment.

WHEREFORE, the United States Trustee submits this objection to the debtor's motion seeking an order that a patient care ombudsman is not necessary in this case. The debtor has not met its burden under 11 U.S.C. §333(a)(1), and it cannot do so. The debtor's past history with the Minnesota Board of Medical Practices establishes that the debtor cannot meet its burden even after an evidentiary hearing. Accordingly, the Acting U.S. Trustee submits that the court should order her to appoint a patient care ombudsman as required by §333.

MARY R. JENSEN
Acting United States Trustee
Region 12

Dated: December 14, 2022    By:    e/Michael R. Fadlovich
Trial Attorney
MN ID #158410
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN   55415
612/ 334-1356

## VERIFICATION

    I, Michael R. Fadlovich, an attorney for the United States Trustee, do hereby certify that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: December 14, 2022

                                                                                                                                               _____s/Michael R. Fadlovich_____
                                                                                                                                                 Michael R. Fadlovich

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

MEnD Correctional Care, PLLC,

Debtor.

Chapter 11

BKY 22-60407

ORDER

This matter came before the court for hearing on a motion by the debtor seeking an order that a patient care ombudsman not be appointed in this case. Objections to the motion were filed by the Acting U.S. Trustee, appearing through her counsel. Michael R. Fadlovich. Other appearances were as noted in the record.

Based upon the pleadings, the arguments of counsel, the findings of the court on the record and all the files and records herein, it is hereby ORDERED:

1. The debtor's motion seeking an order that a patient care ombudsman need not be appointed is denied.

2. The Acting United States Trustee shall appoint a patient care ombudsman pursuant to 11 U.S.C. §333(a)(1).

_____
MICHAEL E. RIDGWAY
United States Bankruptcy Judge

CERTIFICATE OF SERVICE

In re:

                                                Chapter 11

MEnD Correctional Care, PLLC,                    BKY 22-60407

            Debtor.

    I, Michael Fadlovich, under penalty of perjury that on December 14, 2022, I caused to be served a copy of the foregoing U.S. Trustee's Response in Objection to Motion by Debtor seeking an Order that an Ombudsman Not Be Appointed, along with verification and proposed order, by U.S. mail, postage prepaid, to each person named below:

    None

All other parties were served via the court's CM/ECF service system.


Dated: December 14, 2022                            By:     e/Michael R. Fadlovich
                                                                         Office of the United States Trustee