UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                              Chapter 11 case

MEnD Correctional Care, PLLC

                                              BKY #22-60407
               Debtor.

NOTICE OF EXPEDITED HEARING AND
MOTION TO DISMISS OR CONVERT CASE
TO A CASE UNDER CHAPTER 7

TO:     The debtors and other entities specified in Local Rule 9013-3.

     1.  Mary R. Jensen, Acting United States Trustee, by her undersigned attorney, moves the

Court for the relief requested below and gives notice of hearing.

     2.  The court will hold an expedited hearing on this motion before the Honorable

Michael E. Ridgway, U.S. Bankruptcy Judge, at 9:30 a.m. on Wednesday, February 8, 2023, in

Courtroom 7 West, Diana E. Murphy U.S. Courthouse, 300 South Fourth Street, Minneapolis,

MN  55415.

     3.  A response or objections to this motion must be filed and delivered not later than

February 3, 2023, which is five days before the time set for the hearing (including Saturdays,

Sundays, and holidays).    Due to the expedited nature of the hearing, the U.S. Trustee will not

object to any response filed up to 48 hours before the scheduled hearing.  **UNLESS A**

**RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY**

**GRANT THE MOTION WITHOUT A HEARING.**

4.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, FED. R. BANKR. P. 5005 and Local Rule 1070-1. Venue issues are also controlled by 28 U.S.C. §1408, §1409 and §1412. The Acting United States Trustee has standing to file this motion pursuant to 28 U.S.C. §586(a) and 11 U.S.C. §307.    This matter constitutes a core proceeding.

5.    This motion arises under 11 U. S. C. §1112(b)(4) and FED. R. BANKR. P. 1017 and 2002.    This motion is filed under FED. R. BANKR. P. 9014 and Local Rules 9013-1 through 9013-3.    Movant requests that this case be converted to chapter 7 or dismissed, preferably converted to chapter 7.    Conversion is the better alternative because the debtor is winding down its operation and will cease its business operations in any event.    A liquidation under chapter 7 will result in a more equitable resolution for all creditors, including all unpaid administrative expense claimants, many of whom, on information and belief, will hold claims for unpaid wages. Further, a chapter 7 trustee can independently investigate and resolve any possible fraudulent transfers incurred prior to the commencement of the case.

## FACTS

6.    The voluntary petition commencing this case was filed on November 30, 2022.    The debtor is not a small business debtor.    The debtor is a Health Care business, as described in 11 U.S.C. §101(27A), and as such, provides health care services to correctional institutions, primarily county jails, in five states.

7.    On December 2, 2022, the debtor filed a motion to pay pre-petition wages, salaries and benefits.    ECF #7.    Pursuant to that motion, the debtor was to pay all pre-petition wages and benefits having priority under 11 U.S.C. §507(a)(4), and to bring all the wages and benefits current. That motion was granted on December 7, 2022.    ECF #11.

8.   On January 5, 2023, the undersigned counsel to the U.S. Trustee conducted the meeting of creditors required under 11 U.S.C. §341(a).    At that meeting, the debtor's Director of Operations, Dr. Todd Leonard, appeared and testified.    Dr. Leonard testified, *inter alia*, that the debtor then had about seventy employees and that the payroll had previously been made pursuant to the wage motion approved by the court on December 7, 2022.    However, Dr. Leonard further testified that a payroll was due on Monday, January 2, 2023, that had not been fully made because the debtor did not then have sufficient funds.   Dr. Leonard testified that he expected the debtor to have the funds within seven to ten days, based on the continued collection of accounts receivable by the debtor.

9.   At the §341(a) meeting, Dr Leonard further testified that the debtor's professional liability insurance coverage was set to expire on March 2, 2023, at which time the debtor would have to completely cease all business operations.    He had testified that on December 1, 2022, the debtor sent out notices to all its customers that it would cease business in ninety days, suggesting that they find new health care providers as soon as possible.    On information and belief, the debtor's professional liability insurance coverage is being paid via a premium financing agreement wherein payments are made monthly.   The status of debtor's insurance premium payments is unknown to the U.S. Trustee, but the existence of a premium financing agreement would indicate that professional liability coverage could change from month to month.

10.    On December 21, 2022, the court entered an order requiring the Acting U.S. Trustee to appoint a Patient Care Ombudsman (PCO), pursuant to 11 U.S.C. §333(a).   On December 29, 2022, the Acting U.S. Trustee appointed Susan N. Goodman as PCO and that same date, the court approved the appointment. ECF #30.

11.    Pursuant to her duties as PCO, Ms. Goodman undertook an investigation into the debtor's business operations and the care provided by the debtor to its various customers, all of whom operate correctional institutions which hold prisoners that have medical needs.   The PCO's investigation initially consisted of contacting the debtor's customers, and the individuals who manage and are responsible for the health and well-being of individuals in custody.   That contact was undertaken by the PCO by telephone due to logistic and timing issues.

12.   On January 17, 2023, the PCO filed an initial report with the court, as required by 11 U.S.C. §333(b)(2). See ECF #42. (Report). The Report covered the period from December 29, 2022 through January 17, 2023, and provided, *inter alia*, the following:

A.   The debtor initially provided health care services to twenty-six different counties or entities, and at the time the case had commenced, that number was down to twenty locations.

B.   The Debtor provided notice to its customers on December 1, 2022, that it would be winding down and ceasing all operations no later than March 1, 2023.

C.   The PCO's Report describes the severe financial crush the debtor is experiencing as it winds down its operation. The debtor does not have sufficient funds to meet ongoing payroll and has missed parts of its payroll, with about 30% of the employees missing two pay checks.   ECF #42, p.2, ¶1, and p.3, ¶3.

D. At least one of debtor's customers directly paid their nurse's payroll in order to retain medical coverage.   *Id.* At ¶4.

E.   There may be as many as ten, and as few as five remaining customers who need the debtor's services in February.   ECF #42, p.3, ¶2.

F.   The biggest concerns of the debtor's customers during the wind down period are "physician oversight for nursing services and availability of liability insurance coverage."   ECF #42, p.4, ¶3.

G.   Additional issues exist with electronic health records and the need for records transitions to a new care provider.   *Id.* at ¶4.

H.   The debtor may cease to have professional liability insurance coverage on or about February 1, 2023. Without such coverage, it cannot continue to provide medical services to its customers.   ECF #42, p.4, ¶3.


13.   On January 18, 2023, counsel to the debtor provided the Acting U.S. Trustee with an updated client care list which set forth the status of each of debtor's clients.   That list provided that no more than ten customers would have their status with the debtor unresolved after January 31, 2023.   Specifically, of the ten, five are going with a competitor known as ACH (Advanced Correctional Health), with an uncertain start date.   OF the remaining five, two were going with a local hospital or health care company with no set start date.    The last three simply have ending dates of 2/13/23, 2/19/23, and "very likely the first week of February".   A true and correct of the debtor list is attached hereto as Exhibit A.   Exhibit A does not precisely comport with the findings of the PCO insofar as there are inconsistencies between the debtor's view of progress in the wind down, and that of the PCO.

14.   On January 12, 2023, the Office of the U.S. Trustee was notified by the Bank of Elk River that it would not be setting up a debtor in possession bank account for use by the debtor during the pendency of this case.    The establishment and use of a debtor in possession

bank account is a requirement for all chapter 11 debtors.    On information and belief, the debtor

has not set up such an account at a different financial institution.

15.    On January 19, 2023, the debtor filed two motions to sell assets.   See ECF #45 and

#46.   Those motions, which are set for hearing simultaneously with the hearing on this motion,

seek to liquidate certain of the debtor's assets, both in an auction and in a direct sale.   The assets

consist of office furniture and equipment.    The sale of those assets would finalize the

liquidation of debtor's business.    The U.S. Trustee anticipates objecting to such sales based,

*inter alia,* on inadequate marketing of the property.

## MOTION TO CONVERT

16.    Pursuant to 11 U.S.C. §1112(b), the Court may dismiss or convert a chapter 11 case

for cause after notice and a hearing.    Section 1112(b)(4) states that cause for dismissal or

conversion to chapter 7 includes, among other things:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 under the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States Trustee . . . .

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement or to file or confirm a plan within the time fixed by this title or by order of the court,

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144 ;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligations that first becomes payable after the date of the filing of the petition.

17.    Cause exists to immediately convert the case to chapter 7 because, at the time this motion is heard, the debtor will have either completely ceased operations, or will have run out of cash to continue operations.    The debtor concedes it will go out of business, it is simply a matter of timing, and a matter of determining who will finalize the liquidation of the estate.    As described above and in the PCO's report, the debtor cannot continue to cover ongoing payroll expenses and may be without professional liability coverage.    Either of those events, standing alone is cause for immediate conversion to chapter 7.    The Acting U.S. Trustee does not fault the debtor's current management for its efforts to conduct an orderly wind down of its business and an orderly transition of customers to new providers, however, without the cash to do so, the case must be converted to chapter 7 and the business operations immediately ceased.

18.    Under 11 U.S.C. §1112(b)(4)(A), cause exists to immediately convert the case to a case under chapter 7 based on an ongoing loss to and diminution of the estate and an absence of a reasonable likelihood of rehabilitation.    As described above, the debtor is now (or at the time this motion is heard, will be) out of money with which to cover payroll or liability insurance. Debtor concedes it will soon cease operations. In the mean-time, there are continuing losses to and a diminution of the estate and an inability to reorganize.    The absence of a reasonable likelihood of rehabilitation under chapter 11, coupled with the ongoing losses to and diminution of the estate arising from the ongoing incurrence of unpaid administrative expenses, establishes that the two elements of §1112(b)(4)(A) required for conversion have been met and the case should be converted to chapter 7.

19.    Likewise, cause for conversion exists based on the gross mismanagement of the

debtor, as provided for in 11 U.S.C. §1112(b)(4)(B).    Despite the efforts by current management

to do the right thing and conduct an orderly wind down of operations, the incurrence of unpaid

payroll rises to the level of gross mismanagement.    The debtor simply cannot continue to allow

medical services to be provided by individuals who, at least in part, are unlikely to get paid[1].

Gross mismanagement of estate assets is additional cause to convert or dismiss under 11 U.S.C.

§1112(b)(4)(B).

### The Case Should be Converted to Chapter 7

20.    Conversion to chapter 7 is a better alternative than dismissal because the debtor has

office furniture and equipment that can be sold and used to pay creditors.    The value of such

proposed sales are at minimum, shown in the debtor's pending motions to sell assets directly and

via auctions.    See ECF #45 and ECF #46.    Further, there are already administrative expenses

that need to be resolved, including unpaid post-petition wages, fees of the PCO, and other costs.

Conversely, dismissal would simply leave employees, customers, and the entire bankruptcy estate

in havoc, with no defined outcome.    Accordingly, the court should prefer conversion over

dismissal.

### Need for Expedited Hearing

21.    The Acting U.S. Trustee requests that the court shorten the time set for hearing on

this motion by two days.    The court is already scheduled to hear the debtor's motion to sell assets

on February 8, 2023.    Allowing the U.S. Trustee's motion to be heard at the same time will allow

---

[1] Additionally, the direct payment of a nurse by the customer (as described in paragraph 12(D), above) may have the effect of overstating debtor's accounts receivable, from which the debtor expects to generate funds needed for the wind down.

the court to finalize all pending issues at once, resulting in judicial efficiency.    Further, the motions to sell should not be heard prior to the court's addressing this motion. In addition, by February 8, 2023, the debtor and parties should know whether or not the debtor's remaining customers have transitioned to new care providers and whether professional liability insurance coverage is still in force and effect.

## **CONCLUSION**

22.    Based on the record before the court, cause exists to immediately convert this case to chapter 7.    The U.S. Trustee submits that the case should be converted as opposed to dismissed. The debtor concedes it will not successfully emerge from chapter 11.    The PCO has outlined substantial problems, and the debtor continues to incur post petition payroll obligations which it appears unable to meet.    An independent trustee is needed to complete the liquidation of debtor's business, and no purpose is served by any delay in such liquidation.

23.    Once the U.S. Trustee establishes cause for conversion or dismissal, the burden shifts to the debtor to show that "special circumstances" exist which show that a plan can be confirmed quickly and assuredly.    See attached Memorandum.    Here, the debtor cannot make such a showing.

24.    The United States Trustee submits that the foregoing constitutes cause for immediate conversion to chapter 7 pursuant to 11 U.S.C. §1112(b)(4).

WHEREFORE, the Acting United States Trustee moves the Court for an order converting this case. The U.S. Trustee submits that no purpose is served by the debtor delaying the inevitable cessation and liquidation of the debtor's business operations. Accordingly, the court should immediately enter an order converting the case to a case under chapter 7.

Dated: January 20, 2023

MARY R. JENSEN
Acting United States Trustee
Region 12

By:        s/  Michael R. Fadlovich
MICHAEL R. FADLOVICH
Trial Attorney
MN Attorney I.D. No. 158410
United States Trustee's Office
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN    55415
(612) 334-1356

<u>VERIFICATION</u>

      I, Michael R. Fadlovich, attorney for the United States Trustee, the movant named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

January 20, 2023                s/Michael R. Fadlovich      
                                           MICHAEL R. FADLOVICH
                                           Trial Attorney



# MEnD Correctional Care Client List - December 2022

| Client | Contact Name | Contact Title | Agency | Location | Phone # | E-mail | |
|---|---|---|---|---|---|---|---|
| Aitkin County Jail | Karla White | Jail Administrator | County | 118 3ed Avenue NW, Aitkin, MN 56431 | 218-927-7436 | karla.white@co.aitkin.mn.us | Proceeding with Riverwood Healthcare - no start date yet |
| Becker County Jail | Paula Peterson | Jail Administrator | County | 1428 Stony Road, Detroit Lakes, MN 56501 | 218-846-7200 | pmpeter@co.becker.mn.us | Ending on 1/24/23 |
| Benton County Jail | John Lindaman | Jail Administrator | County | 113 E 3rd Street, Vinton, IA 52349 | 319-472-2337 | j.lindaman@bentonsheriff.com | Completed 12/31/22 |
| Carver County Jail | Reed Ashpole | Jail Administrator | County | 606 E. 4th St., Chaska, MN 55318 | 952-361-1202 | rashpole@co.carver.mn.us | Ending on 1/31/23 |
| Chippewa County Jail | J.T. Scharer | Jail Administrator | County | 629 N 11Th St, Suite 14, Montevideo, MN 56265 | 320-269-2121 | jscharecher@co.chippewa.mn.us | Completed 12/31/22 |
| Codington County Jail | Matt Blackwelder | Jail Administrator | County | 14 1st Avenue SE, Watertown, SD 57201 | 605-882-6284 | mblackwelder@codington.org | Completed 12/31/22 |
| Cottonwood County Jail | Jason Rupp | Jail Administrator | County | 902 5th Avenue, Windom, MN 56101 | 507-831-1375 | jason.rupp@co.cottonwood.mn.us | Completed 12/31/22 |
| Crow Wing County Jail | Heath Fosteson | Jail Administrator | County | 313 Laurel Street, Brainerd, MN 56401 | 218-822-7055 | heath.fosteson@crowwing.us | Completed 12/31/22 |
| Douglas County Jail | Lee Johnson | Jail Administrator | County | 509 3rd Avenue West, Alexandria, MN 56308 | 320-762-2996 | leej@co.douglas.mn.us | Ending on 1/31/23 |
| Fillmore County Jail | Jamie Fenske | Jail Administrator | County | 901 NW Houston St, Preston, MN 55965 | 507-765-3874 | jfenske@co.fillmore.mn.us | Going with Advanced (ACH) - no start date set yet |
| Hardin County Jail | Nick Whitmore | Jail Administrator | County | 1116 14th Avenue, Eldora, IA 50627 | 641-939-8197 | nwhitmore@hardincountyia.gov | Completed on 1/11/23 |
| Houston County Jail | Dean Ott | Jail Administrator | County | 306 S Marshall St, Caledonia, MN 55921 | 507-725-3379 | dean.ott@co.houston.mn.us | Going with Advanced (ACH) - no start date set yet |
| Hubbard County Jail | Joe Henry | Jail Administrator | County | 301 Court Avenue, Park Rapids, MN 56470 | 218-732-2514 | jhenry@co.hubbard.mn.us | Going with Advanced (ACH) - no start date set yet (but was previously late February) |
| Jackson County Jail | Shawn Haken | Jail Administrator | County | 400 Sherman Street, Jackson, MN 56143 | 507-847-4420 | shawn.haken@co.jackson.mn.us | Completed on 1/15/23 |
| Kandiyohi County Jail | Matt Akerson | Jail Administrator | County | 2201 23rd Street N, Willmar, MN 56201 | 320-214-6700 | matt.akerson@kcmn.us | Ending on 2/19/23, but could be earlier |
| Meeker County Jail | Jodi Bean | Jail Administrator | County | 326 N Ramssey Avenue, Litchfield, MN 55355 | 320-693-5417 | jodi.bean@co.meeker.mn.us | Trying to mirror Kandiyohi County |
| Nobles County Jail | Daniel Bosman | Jail Administrator | County | 1530 Airport Road, Worthington, MN 56187 | 507-295-5378 | dbosman@co.nobles.mn.us | Completed on 1/9/23 |
| Pennington County Jail | Dave Casanova | Jail Administrator | County | 102 1st St W, Thief River Falls, MN 56701 | 218-681-6161 | dcasanova@penningtonsheriff.org | Unclear whether going with local hospital system or ACH |
| Pipestone County Jail | Tyler Rippentrop | Jail Administrator | County | 416 S Hiawatha Ave, Pipestone, MN 56164 | 507-825-1100 | tyler.rippentrop@pcmn.us | Ending on 1/19/23 |
| Racine County Jail | Bradley Friend | Jail Administrator | County | 717 Wisconsin Avenue, Racine, WI 53403 | 262-636-3483 | bradley.friend@racinecounty.com | Ended on 12/11/22 |
| Redwood County Jail | Matt Luitjens | Jail Administrator | County | 303 E 3rd Street, Redwood Falls, MN 56283 | 507-637-4036 | matt_l@co.redwood.mn.us | Going with Advanced (ACH) - no start date set yet |
| Renville County Jail | Ned Wohlmann | Jail Administrator | County | 104 S 4th Street, Olivia, MN 56277 | 320-523-3778 | nedw@renvillecountymn.com | Ending on 1/31/23 |
| Rock Island County Jail | Jens Lape | Jail Commander | County | 1317 3rd Avenue, Rock Island, IL 61201 | 309-558-3423 | jlape@ricosheriff.org | Ending very likely during the first week in February |
| St Croix County Jail | Kris Anderson | Jail Administrator | County | 1101 Carmichael Road, Hudson, WI 54016 | 715-386-4749 | kris.anderson@sccwi.gov | Ended on 12/4/22 |
| Story County Jail | John Asmussen | Jail Administrator | County | 1315 South B Avenue, Nevada, IA 50201 | 515-451-6181 | jasmussen@storycountyiowa.gov | Going with local healthcare company - finalizing start date very soon |
| Traverse County Jail | Brenda Bartz | Jail Administrator | County | 203 7th Street W, Wheaton, MN 56296 | 320-422-7800 | brenda.bartz@co.traverse.mn.us | Ending on 2/13/23 |
| Watonwan County Jail | Julie Carr | Jail Administrator | County | 715 3rd Avenue S, St James, MN 56081 | 507-375-1206 | julie.carr@co.watonwan.mn.us | Ending on 1/31/23 |
| Wilkin County Jail | Aaron Wood | Jail Administrator | County | 515 Dacotah Ave, Breckenridge, MN 56520 | 218-643-1205 | awood@co.wilkin.mn.us | Completed on 1/10/23 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Chapter 11 case

MEnD Correctional Care, PLLC

BKY #22-60407

Debtor.

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO CONVERT OR DISMISS

The United States Trustee, by the undersigned attorney, submits this memorandum in support of the motion to dismiss this case or convert it to a Chapter 7 case.

CONVERSION TO CHAPTER 7

A proceeding to dismiss a case or convert a case to another chapter is governed by 11 U.S.C. §1112 and FED R. BANKR. P. 9014.   A request for dismissal or conversion of a case shall be made by motion.   A motion to dismiss or a motion to convert a case shall be deemed a motion either to dismiss or to convert, whichever is in the best interest of creditors and the estate.   Local. R. Bankr. P. 1017-2.   A case may be converted to a Chapter 7 case if the debtor may be a debtor under Chapter 7.   11 U.S.C. §1112(f).

Under 11 U.S.C. §1112(b), the specific requirements for the conversion or dismissal of a chapter 11 case are set forth.   That section provides:

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that

      (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

      (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)⊂

      (i) for which there exists a reasonable justification for the act or omission; and

      (ii) that will be cured within a reasonable period of time fixed by the court.

      . . .

(4) for purposes of this subsection, the term "cause" includes

      (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

      (B) gross mismanagement of the estate;

      (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

      (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

      (E) failure to comply with an order of the court;

      (F) unexcused failure to satisfy timely any filing or reporting requirement established by this    title or by any rule applicable to a case under this chapter;

      (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 under the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

      (H) failure timely to provide information or attend meetings reasonably requested by the United States Trustee . . . .

      (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

      (J) failure to file a disclosure statement or to file or confirm a plan within the time fixed by this title or by order of the court,

      (K) failure to pay any fees or charges required under chapter 123 of title 28;

      (L) revocation of an order of confirmation under section 1144 ;

      (M) inability to effectuate substantial consummation of a confirmed plan;

      (N) material default by the debtor with respect to a confirmed plan;

      (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

      (P) failure of the debtor to pay any domestic support obligations that first becomes payable after the date of the filing of the petition.

11 U.S.C. §1112(b).

Cause for conversion or dismissal is not limited to the reasons expressed in §1112(b), (e). 11 U.S.C. 102(3); Moody v. Security Pac. Business Credit, Inc., 85 B.R. 319, 352-53 (W.D. Pa. 1988).

In this case, cause exists to immediately convert the case to chapter 7. The debtor has determined to wind down and cease its business operations. It is unable to meet payroll, and there are significant concerns about its ability to provide health care to patients who are in the custody of its customers. The debtor simply has no chance of success under chapter 11, based on its current situation.

If allowed to remain under chapter 11, the losses to the bankruptcy estates will continue to accrue in the form of administrative expenses, including U.S. Trustee fees, and other costs related to the chapter 11 administration and monthly operating report preparation. These expenses will be incurred at a time when the debtor has a grossly insufficient level of income. No purpose is served by the debtor remaining under chapter 11.

Since there is cause for conversion of the case to chapter 7, the burden has now shifted to the debtor to show that he should remain in chapter 11. See 11 U.S.C. §1112(b)(2). That section requires that the bankruptcy court make a finding that "specifically identifies unusual circumstances" establishing that conversion is not in the best interests of the estate and creditors, and that there is a reasonable likelihood that a plan will be confirmed within a reasonable time. *Id.*

Here, based on what's transpired thus far in the cases, the debtor cannot allege that such "special circumstances" exist. No plan and disclosure statement have been filed by the debtor and any such plan, if it were filed, would be of questionable good faith. Simply put, the situation demands immediate conversion to chapter 7.

"The purpose of §1112(b)(1) is to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Loop v. U.S. Trustee, 379 F.3d 511, 515 (8th Cir 2004), citing In re Lizeric Realty Corp, 188 B.R. 499, 503 (Bankr. S.D. N.Y 1995).    Any delay in dismissal or conversion is simply gambling with the creditors' funds, a result which cannot be countenanced by the court.

In addition, the parties to a case are entitled to rely on facts established in the record in making a case for conversion or dismissal under §1112(b). Loop, at 518.   Here, the U.S. Trustee relies on the verified motions in the record, as well as absences in the record of documents the debtor should be filing.   There are no factual disputes which would mitigate the cause established for immediate conversion and accordingly, dismissal or conversion is imperative.   Based on the foregoing, cause exists to immediately convert the case to a case under chapter 7.


WHEREFORE, the U.S. Trustee submits this memorandum in support of his motion seeking dismissal or conversion of this bankruptcy case.

<div style="margin-left: 40%;">

Respectfully submitted,
MARY R. JENSEN
Acting United States Trustee

</div>

Dated January 20, 2023              By ____s/Michael R. Fadlovich_____
                                        MICHAEL R. FADLOVICH
                                        Trial Attorney
                                        MN Attorney I.D. No. 158410
                                        U.S. Trustee's Office
                                         1015 U.S. Courthouse
                                         300 South Fourth Street
                                        Minneapolis, MN   55415
                                        (612) 334-1356

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

          MEnD Correctional Care, PLLC

                    Debtor.

Chapter 11 case

BKY #22-60407

## O R D E R

The above-entitled chapter 11 cases came before the court on the motion of the United States Trustee seeking an order dismissing or alternatively converting the cases to chapter 7. Michael Fadlovich appeared for the U.S. Trustee.    Steven B. Nosek appeared for the debtor. Other appearances, if any, were as noted in the record.

Based upon the motion filed by the U.S. Trustee, any findings of the court on the record, and all the files, records and proceedings herein, it is hereby ORDERED:

The chapter 11 case of MEnD Correctional Care, PLLC is converted to a case under chapter 7.

_____
Michael E. Ridgway
United States Bankruptcy Judge